First Nat. Bank of Charlotte agt. National Ex. Bank of Chicago.

# UNITED STATES SUPREME COURT.

The First National Bank of Charlotte, plaintiff in error, agt. The National Exchange Bank of Baltimore.

*Powers of national banks to deal in stocks.*

Dealing in stocks by national banks is not expressly prohibited, but such a prohibition is implied from the failure to grant the power.

In the honest exercise of the power to compromise a doubtful debt owing to a bank, it can hardly be doubted that stocks may be accepted in payment and satisfaction, with a view to their subsequent sale or conversion into money so as to make good or reduce an anticipated loss.

*August,* 1876.

In error to the court of appeals of the state of Maryland. Mr. chief justice Waite delivered the opinion of the court.

The question presented for our consideration in this case is whether a national bank, organized under the national banking act, may, in a fair and *bona fide* compromise of a contested claim against it, growing out of a legitimate banking transaction, pay a larger sum than would have been exacted in satisfaction of the demand, so as to obtain by the arrangement a transfer of certain stocks in railroad and other corporations, it being honestly believed at the time that by turning the stocks into money, under more favorable circumstances than then existed, a loss which would otherwise accrue from the transaction might be averted or diminished. Such, according to the finding below, was the

First Nat. Bank of Charlotte agt. National Ex. Bank of Chicago.

state of facts out of which this suit has arisen. That finding is conclusive upon us.

A national bank can " exercise by its board of directors, or duly authorized officers or agents, subject to law, all such incidental powers as shall be necessary to carry on the business of banking by discounting and negotiating promissory notes, drafts, bills of exchange and other evidences of debt, by receiving deposits, by buying and selling exchange, coin and bullion, by loaning money on personal security, and by obtaining, issuing and circulating notes " (*Rev. Stat.*, *sec.* 5,136, *part* 7 ; 15 *Stat.*, 101, *sec.* 8).

Authority is thus given to transact such a banking business as is specified, and all incidental powers necessary to carry it on are granted. These powers are such as are required to meet all the legitimate demands of the authorized business and to enable a bank to conduct its affairs within the general scope of its charter safely and prudently. This necessarily implies the right of a bank to incur liabilities in the regular course of its business as well as to become the creditor of others. Its own obligations must be met and debts due to it collected or secured. The power to adopt reasonable and appropriate measures for these purposes is an incident to the power to incur the liability or become the creditor. Obligations may be assumed that result unfortunately. Loans or discounts may be made that cannot be met at maturity. Compromises to avoid or reduce losses are oftentimes the necessary results of this condition of things. These compromises come within the general scope of the powers committed to the board of directors and the officers and agents of the bank, and are submitted to their judgment and discretion, except to the extent that they are restrained by the charter or by-laws. Banks may do, in this behalf, whatever natural persons could do under like circumstances.

To some extent it has been thought expedient in the national banking act to limit this power. Thus, as to real estate, it is provided (*Rev. Stat.*, *sec.* 5,137; 13 *Stat.*, 107,

*sec.* 28) that it may be accepted in good faith as security for or in payment of debts previously contracted, but if accepted in payment it must not be retained more than five years. So while a bank is expressly prohibited (*sec.* 5,201 ; 13 *Stat.*, 110, *sec.* 35) from loaning money upon or purchasing its own stock, special authority is given for the acceptance of its shares as security for and in payment of debts previously contracted in good faith, but all shares purchased under this power must be again sold or disposed of at private or public sale within six months from the time they are acquired.

Dealing in stocks is not expressly prohibited, but such a prohibition is implied from the failure to grant the power. In the honest exercise of the power to compromise a doubtful debt owing to a bank, it can hardly be doubted that stocks may be accepted in payment and satisfaction, with a view to their subsequent sale or conversion into money so as to make good or reduce an anticipated loss. Such a transaction would not amount to a dealing in stocks (*Flecker* agt. *Bank U. S.*, 8 *Wheat.*, 351). But, of course, such transactions must be compromises in good faith and not mere cloaks or devices to cover unauthorized practices. A debt due from or a contested obligation resting upon a bank, it is said, does not occupy any different position in respect to this power of adjustment and compromise from that of a debt owing to it. Whatever may be done in one case to avoid loss in legitimate business may be done in the other under the same circumstances.

Judgment affirmed.